UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
NORTHERN DIVISION

| | |
|---|---|
| MICHAEL MURPHY, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) No. 2:12CV22 HEA |
| | ) |
| GARY CAMPBELL, et al, | ) |
| | ) |
| Defendants. | ) |

## MEMORANDUM AND ORDER

This matter is before the Court on Defendants Gary Campbell, Tomas Cabrera and Corizon Inc.s' Motion for Summary Judgment, [Doc. No. 18]. Plaintiff has failed to respond to the motion. For the reasons set forth below, the Motion is granted.

## Introduction

Plaintiff brought this action for an alleged violation of his Constitutional rights during his confinement at the Northeast Fast Correctional Center. Plaintiff's Complaint alleges that Defendants violated his constitutional rights by denying medical treatment. Plaintiff claims these actions constitute deliberate indifference to his medical needs.

## Facts and Background

Rule 7-4.01 (E) of this Court's Local Rules provides:

> Rule 7-4.01(E)  A memorandum in support of a motion for summary judgment shall have attached a statement of uncontroverted material facts, set forth in a separately numbered paragraph for each fact, indicating whether each fact is established by the record, and, if so, the appropriate citations. Every memorandum in opposition shall include a statement of material facts as to which the party contends a genuine issue exists. Those matters in dispute shall be set forth with specific references to portions of the record, where available, upon which the opposing party relies. The opposing party also shall note for all disputed facts the paragraph number from movant's listing of facts. All matters set forth in the statement of the movant shall be deemed admitted for purposes of summary judgment unless specifically controverted by the opposing party.

Plaintiff did not respond to Defendants' Statement of Uncontroverted Material Facts. Those facts, set out below, are therefore deemed admitted.

Plaintiff Michael Murphy ("Plaintiff") is an offender in the custody of the Missouri Department of Corrections. During part of the time period relevant to Plaintiff's Complaint, Plaintiff was confined at the Northeast Correctional Center in Bowling Green, Missouri .

Defendant Corizon, Inc. has a contractual agreement with the State of Missouri to provide medical services to the Missouri Department of Corrections. Defendant Dr. Tomas Cabrera is a physician licensed in the State of Missouri who is retained as an independent contractor physician by Corizon to provide medical care to offenders incarcerated at Northeast Correctional Center.  Defendant Gary Campbell is a physician licensed in the State of Missouri who is retained as an

independent contractor physician by Corizon .

Dr. Campbell did not personally provide any medical care or treatment to Plaintiff.  Plaintiff's allegations against Dr. Campbell relate to Dr. Campbell's alleged role in denying Plaintiff orthopedic shoes.

Plaintiff reportedly has a history of medical issues relating to his ankles, which includes a car accident where both ankles were fractured and required bilateral ankle surgery in 1973.  Plaintiff alleges that he sought medical care during his incarceration at Northeast Correctional Center, starting on or around January 1, 2010, for these pre-existing ankle injuries.  Plaintiff alleges in his Complaint that he needed orthopedic shoes for his ankles and that Defendants Campbell and Cabrera failed to provide said orthopedic shoes.  Plaintiff claims that, as a result of the alleged denial of "these needed treatments and aids [orthopedic shoes], and potential nerve graph surgery" he suffered "serious, permanent, and debilitating physical and neurological injuries including, but not limited to, massive neurological damage to both ankles and feet, disfiguration, severe chronic pain and associated degeneration of the bone and atrophy of the muscles, tendons, [and] ligaments . . . ."

Plaintiff has received medical care from multiple physicians while incarcerated, including from Dr. Covillo on November 24, 2010 and December

17, 2010. Dr. Covillo prescribed naproxen and acetaminophen to Plaintiff for a period of three months each to treat arthritis pain.

Dr. Gilmore examined Plaintiff on February 23, 2011, and prescribed naproxen to Plaintiff for a six-month period.

Plaintiff first complained of ankle pain while at Northeast Correctional Center on April 10, 2011; he was given Tylenol and referred to Dr. Cabrera for examination. Dr. Cabrera first examined Plaintiff for his complaints of ankle pain on April 12, 2011. During the April 12 evaluation, Plaintiff told Dr. Cabrera that he had fractured his right ankle in another prison six years ago. Based upon Plaintiff's complaint of right ankle pain on April 12, Dr. Cabrera ordered xrays of the plaintiff's right ankle. The x-rays taken of the plaintiff's right ankle were interpreted as having "findings of old medial malleolar fracture with no findings of acute osseous injury" and that "acute fracture or dislocation is not apparent."

Medial malleolar fractures may be treated conservatively, through rest, ice, pain medication and anti-inflammatory drugs, immobilization, and physical therapy. When determining the appropriate course of treatment for Plaintiff's ankles, Dr. Cabrera evaluated the x-ray report showing no acute fracture, dislocation, or osseous injury, and no evidence of any recent fractures or recent injury to the ankles. In Plaintiff's case, based upon Dr. Cabrera's examination of

the plaintiff and review of the x-rays taken of the plaintiff's ankles, no discernible evidence of a recent injury to the plaintiff's ankles was discovered.

Following his examination of the plaintiff and review of the x-rays, Dr. Cabrera fitted the plaintiff with bilateral ankle sleeves and provided him with pain medication. Dr. Cabrera determined that ankle sleeves were appropriate medical care for Plaintiff's ankles as these devices may be used to stabilize and protect the ankle area from further injury. Plaintiff signed a medical product receipt acknowledging his receipt of the ankle sleeves on May 20, 2011. After personally evaluating Plaintiff and reviewing Plaintiff's medical records, including records from the Arkansas Department of Corrections, Dr. Cabrera determined that orthopedic shoes were not medically indicated for the plaintiff.

On May 31, 2011, the plaintiff completed a medical services request complaining of ankle pain.

On June 14, 2011, Nurse Linda Wiley examined Plaintiff for his complaint of ankle pain. Nurse Wiley observed that the plaintiff was not compliant with Dr. Cabrera's prescribed medical treatment, in that the plaintiff was not wearing the ankle sleeves that had been issued to him on May 20.

On August 3, 2011, Dr. Cabrera prescribed gel pad insoles and ankle sleeves for the plaintiff for his ankles. Plaintiff was provided with these gel

insoles and two ankle sleeves on August 15, 2011, and signed a receipt for medical product acknowledging same. Plaintiff requested additional gel pad insoles in October 2011 and was provided same.

Plaintiff's next report of any medical issues relating to his ankles was on November 7, 2011. A nurse examined Plaintiff on November 7 for his complaint regarding his ankles; she noted a small amount of swelling and provided him with ibuprofen.

Dr. Cabrera evaluated the plaintiff on November 11, 2011, and found that plaintiff had a corn on his foot requiring removal. Dr. Cabrera also prescribed naproxen and another insole for Plaintiff's complaints of ankle pain on November 11. The naproxen prescription was good for a three-month period, through February 9, 2012.

Plaintiff again reported ankle pain on November 18, 2011, advising medical staff that his "ankles were broken 20-30 years ago and he is still having pain." Plaintiff was examined and referred to Dr. Cabrera. Dr. Cabrera examined the plaintiff on November 21, 2011, and determined that the options were limited for Plaintiff's longstanding complaints of ankle pain relating to an injury occurring many years ago, other than the pain medications, gel insoles, and ankle sleeves already prescribed. Specifically, there was no evidence of any recent injury to

Plaintiff's ankles requiring treatment or correction. Plaintiff's longstanding ankle injuries could not be eliminated but could be treated through aides to make Plaintiff more comfortable.  It was Dr. Cabrera's opinion that the shoes that Plaintiff had been issued, along with the gel insoles and ankle sleeves, were medically appropriate to treat Plaintiff's ankle complaints.

Corizon medical staff again provided Plaintiff with gel insoles in December 2011.   Plaintiff was also provided with insoles on March 20, 2012.

Plaintiff was evaluated by Dr. Cabrera on April 11, 2012, and was treated for multiple callouses on his feet.  Dr. Cabrera also renewed Plaintiff's medical lay-ins on April 11, 2012.  Plaintiff was also provided with pain medication through the time period relevant to the Complaint.

## Discussion

### Summary Judgment Standard

The standard for summary judgment is well settled.  In determining whether summary judgment should issue, the Court must view the facts and inferences from the facts in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Woods v. DaimlerChrysler Corp.,* 409 F.3d 984, 990 (8th Cir. 2005).  The moving party has the burden to establish both the absence of a genuine issue of material fact and

that it is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Enter. Bank*, 92 F.3d at 747. Once the moving party has met this burden, the nonmoving party may not rest on the allegations in his pleadings but by affidavit or other evidence must set forth specific facts showing that a genuine issue of material fact exists. Fed.R.Civ.P. 56(e); *Anderson* 477 U.S. at 256; *Krenik v. Le Sueur*, 47 F.3d 953, 957 (8th Cir. 1995). "'Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment.' *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505 (1986)." *Hitt v. Harsco Corp.* 356 F.3d 920, 923 (8th Cir. 2004). An issue of fact is genuine when "a reasonable jury could return a verdict for the nonmoving party" on the question. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. at 248; *Woods v. DaimlerChrysler Corp.,* 409 F.3d at 990. To survive a motion for summary judgment, the "nonmoving party must 'substantiate his allegations with sufficient probative evidence [that] would permit a finding in [his] favor based on more than mere speculation, conjecture, or fantasy.' *Wilson v. Int'l Bus. Machs. Corp.*, 62 F.3d 237, 241 (8th Cir. 1995)(quotation omitted)." *Putman v. Unity Health System*, 348 F.3d 732, 733-34 (8th Cir. 2003). "[A] complete failure of proof concerning an essential element of the nonmoving

party's case necessarily renders all other facts immaterial." *Celotex*, 477 U.S. at 323.  The Court will review the facts in this case with the stated standard in mind.

"The Eighth Amendment prohibits the infliction of cruel and unusual punishment.  The treatment a prisoner receives in prison and the conditions under which he is confined are subject to scrutiny under the Eighth Amendment." *Schaub v. VonWald,* 638 F.3d 905, 914 (8th Cir.2011) (citing *Helling v. McKinny,* 509 U.S. 25, 31 (1993)).  To prevail on a claim of deprivation of medical care, an inmate must show that the prison official was deliberately indifferent to the inmate's serious medical needs.  *Id.* (citing *Coleman v. Rahija,* 114 F.3d 778 (8th Cir.1997)).  This requires a two-part showing: (1) the inmate suffered from an objectively serious medical need; and (2) the prison official knew of the need, yet deliberately disregarded it.  *Id.; See also Farmer v. Brennan,* 511 U.S. 825, 837 (1994); *Estelle v. Gamble,* 429 U.S. 97, 105 (1976).  Whether an inmate's condition is a serious medical need and whether an official was deliberately indifferent to the inmate's serious medical need are both questions of fact.  *Coleman,* 114 F.3d at 785.

First, the objective component requires a serious medical need be established by the inmate-plaintiff.  A serious medical need is "one that has been diagnosed by a physician as requiring treatment, or one that is so obvious even a

layperson would easily recognize the necessity for a doctor's attention." *Von Wald,* 638 F.3d at 914 (citing *Camberos v. Branstad,* 73 F.3d 174, 176 (8th Cir.1995)). If the need is obvious to a layperson, there is no requirement to verify this by medical evidence. *Id.* (citing *Hartsfield v. Colburn,* 371 F.3d 454, 457 (8th Cir.2004)). The determination that a medical need is objectively serious is a factual finding. *See Coleman,* 114 F.3d at 784. The determination of whether a medical need is sufficiently obvious cannot be analyzed in a vacuum and background knowledge of the inmate's medical condition or medical records is part of the analysis. *Jones v. Minnesota Dept. of Corrections,* 512 F.3d 478, 482 (8th Cir.2008).

Second, the subjective component requires a plaintiff to show that the defendant actually knew of, but deliberately disregarded, such need. *Grayson v. Ross,* 454 F.3d 802, 808–809 (8th Cir.2006); *Moore v. Jackson,* 123 F.3d 1082, 1086 (8th Cir.1997). Prisoners alleging deliberate indifference must show more than negligence, even more than gross negligence, and must establish a "mental state akin to criminal recklessness: disregarding a known risk to the inmate's health." *Jolly v. Knudsen,* 205 F.3d 1094, 1096 (8th Cir.2000); *Gordon v. Frank,* 454 F.3d 858, 862 (8th Cir.2006). "This is true whether the indifference is manifested by prison doctors in their response to the prisoner's needs or by prison

guards in intentionally denying or delaying access to medical care or intentionally interfering with the treatment once prescribed ." *McRaven v. Sanders,* 577 F.3d 974 at 979 (8th Cir.2009) (citing *Gamble,* 429 U.S. at 104–105). "The inmate must clear a substantial evidentiary threshold to show the prison's medical staff deliberately disregarded the inmate's needs by administering inadequate treatment." *Nelson v. Shuffman,* 603 F.3d 439, 448–449 (8th Cir.2010). The Supreme Court has held prison officials may not be held liable if they prove that they were unaware of even an obvious risk or if they responded reasonably to a known risk, even if the harm ultimately was not averted. *Farmer,* 511 U.S. at 826. Deliberate indifference "must be measured by the official's knowledge at the time in question, not by 'hindsight's perfect vision.'" *VonWald,* 638 F.3d at 915 (quoting *Jackson v. Everett,* 140 F.3d 1149, 1152 (8th Cir.1998)). The determination that prison officials had actual knowledge of a serious medical need may be inferred from circumstantial evidence or from the very fact that the risk was obvious. *See Farmer,* 511 U.S. at 842. However, "a prisoner's mere difference of opinions over matters of expert medical judgment or a course of medical treatment fail[s] to rise to the level of a constitutional violation." *Taylor v. Bowers,* 966 F.2d 417, 421 (8th Cir.1995).

A serious medical need is "one that has been diagnosed by a physician as

requiring treatment, or one that is so obvious that even a layperson would easily recognize the necessity for a doctor's attention." *Coleman,* 114 F.3d at 784 (citing *Branstad,* 73 F.3d at 176). Yet, "[n]ot every ache and pain or medically recognized condition supports a claim of Eighth Amendment violation and the claim must involve a substantial risk of serious harm to the inmate." *Williams v. Arkansas Dept. of Correction,* 207 S.W.3d 519, 523–524 (2005) (citing *Roberson v. Goodman,* 293 F.Supp.2d 1075 (2003). "To evaluate a claim for medical need, the civilized minimum of public concern for the health of prisoners is determined, striking a balance between objective need and cost." *Id.,* citing *Ralston v. McGovern,* 167 F.3d 1160.

In response to Defendants Motion for Summary Judgment, Plaintiff has presented no medical records showing that any of the alleged actions by these Defendants had any adverse effect on the ankle condition. The record before the Court shows that defendants treated plaintiff on a number of occasions. They reviewed plaintiff's medical records, conducted physical examinations, evaluated plaintiff's complaints and concerns and ordered x-rays when warranted. This course of treatment was consistent with plaintiff's medical needs.

Plaintiff seeks specific types of treatment and claims that the failure to provide this specific treatment rises to the level of a constitutional violation.

Plaintiff's disagreement with his treatment is, however, misplaced. *See Dulany v. Carnahan,* 132 F.3d 1234, 1239 (8th Cir.1997) (prison doctors remain free to exercise their independent medical judgment).

Defendant Corizon moves for summary judgment based on Plaintiff's failure to establish an unconstitutional policy, custom or practice. Plaintiff does not identify any Corizon policies which violated his constitutional rights, and therefore, any claim based on *respondeat superior* is not recognized under Eighth Circuit precedent. In *Sanders v. Sears, Roebuck & Co.,* 984 F.2d 972 (8th Cir.1993), the Eighth Circuit rejected a claim that a private corporation was liable under the doctrine of *respondeat superior* for the actions of its security guard. Specifically, the Eighth Circuit held that: a corporation acting under color of state law will only be held liable under § 1983 for its own unconstitutional policies. The proper test is whether there is a policy, custom or action by those who represent official policy that inflicts injury actionable under § 1983. *Sanders,* 984 F.2d 972, 975-76 (1993) (citing *Monell v. Department of Social Servs.,* 436 U.S. 658, 690 (1978)) (internal citations omitted). Similarly, Plaintiff's § 1983 claim fails. Plaintiff has not alleged nor proven any "policy or customs" of Corizon official policy, custom, or action from which he derives his claims of liability under § 1983. Plaintiff merely alleges that Corizon is liable under a theory of

vicarious liability. Plaintiff specifically complains of specific actions taken by the individual defendants and has failed to establish any policy promulgated by Corizon which injured him in any way.

It is well established that liability under 42 U.S.C. § 1983 cannot be grounded upon a *respondeat superior* theory of recovery. *City of Canton, Ohio v. Harris,* 489 U.S. 378, 385, 109 S.Ct. 1197, 103 L.Ed.2d 412 (1989); *Choate v. Lockhart,* 7 F.3d 1370, 1376 (8th Cir.1993); *Oldham v. Chandler-Halford,* 877 F.Supp. 1340, 1356 (N.D.Iowa 1995). The Eighth Circuit has discussed the ways in which a supervisor *can* incur liability under § 1983 as follows: A supervisor is liable "for an Eighth Amendment violation when the supervisor is personally involved in the violation or when the supervisor's corrective inaction constitutes deliberate indifference toward the violation." *Boyd v. Knox,* 47 F.3d 966, 968 (8th Cir.1995) (footnote omitted). "The supervisor must know about the conduct and facilitate it, approve it, condone it, or turn a blind eye [to it]." *Id.* (internal quotation marks omitted). Likewise, other courts have stated supervisory officials are liable under § 1983 only if they fail promptly to provide an inmate with needed medical care, they deliberately interfere with the prison doctors' performance, or they tacitly authorize or are indifferent to the prison doctors' constitutional violations. *E.g., Miltier v. Beorn,* 896 F.2d 848, 854 (4th Cir.1990).

*Meloy v. Bachmeier,* 302 F.3d 845, 849 (8th Cir.2002). Even setting aside the fact that the Court has found that the individual defendants did not violate plaintiff's constitutional rights, no liability for these individual's actions can attach to Corizon, *see Jolly,* 205 F.3d at 1098, because there is no inkling in the record that Corizon was deliberately indifferent to plaintiff's medical needs.

## Conclusion

In conclusion, the Court finds that, in viewing the facts in the light most favorable to Plaintiff, a reasonable jury could **not** conclude that these Defendants violated Plaintiff's constitutional rights. Summary Judgment is therefore warranted.

Accordingly,

**IT IS HEREBY ORDERED** that Defendants' Motion for Summary Judgment, [Doc. No. 18], is **granted**.

A separate judgment will be entered this same date.

Dated this 27th day of June, 2013.

_____
HENRY EDWARD AUTREY
UNITED STATES DISTRICT JUDGE